KING, C.J.,
Dissenting:
¶ 38. I agree that Booker’s conviction should be affirmed. However, I write separately because the majority misses the mark as it wrongly overlooks and dismisses the issue of possible wrongdoing in jury selection. There is no question but what the trial court was given false information regarding the peremptory challenge used against Juror 14, Chauncey Thompson. There is no question but what that false information was relayed to the trial court by the prosecution.
¶ 39. During voir dire, the only discussion of the peremptory challenge as to Chauncey Thompson, is the following:
[PROSECUTOR]: Judge, the first Bat-son challenge arises with Juror Number 14 Chauncey Thompson. The State’s race neutral reason, Judge, is that, in checking the names of our jurors, we found that he has a marijuana conviction, a driver’s licence violation, an insurance violation, a seat belt violation in Pascagoula. He was convicted on 2/5/03. And on those bases, especially the marijuana conviction, Judge, we didn’t want a convicted marijuana holder on our jury.
[[Image here]]
THE COURT: And that information was verified through what source?
[PROSECUTOR]: Through the Pasca-goula City Court.
[DEFENSE ATTORNEY]: We’d like a copy of it. Judge, he’s a 29-year-old black male that works at Sears, Roebuck and Company and has a college education, and they want to kick him off. He was born and raised in this county.
THE COURT: Well, I find that the existence of that prior criminal history is sufficiently race-neutral to justify a peremptory challenge, a peremptory strike.
[DEFENSE ATTORNEY]: Judge, I’d like to see it.
THE COURT: If that information is available, Mr. Jones?
[PROSECUTOR]: Yes, sir. It’s a matter of record with the Pascagoula Municipal Court. His conviction date is February the 5th, 2003. You can go get it.
[DEFENSE ATTORNEY]: Well, I mean, I don’t have access to the Pasca-goula Police Department.
[DISTRICT ATTORNEY]: We just called, Your Honor. That’s how we got it, over the telephone.
[[Image here]]
[PROSECUTOR]: And I assure you we’re not making that up, Judge.
¶ 40. The trial court accepted the State’s representations, and struck Thompson from the jury. On August 13, 2004, Booker for the first time presented evidence which established that the State’s representations regarding Thompson were false. Booker produced an affidavit from Rhonda Diehl, the Pascagoula City Court Clerk, which stated that on the morning of May 17, 2004, she had informed Investigator Scott Mcllrath of the District Attorney’s office that Chauncey Thompson, (Juror 14) had been charged with the four misdemeanors, as stated by the prosecution. However, Diehl’s affidavit stated that she also told Mcllrath that all of the charges had been dismissed by the City because Thompson was not the person who had committed the offenses. Diehl’s affidavit stated:
That on the morning of May 17, 2004, Investigator Scott Mcllrath, of the District Attorney’s Office, Pascagoula, Mississippi called your Affiant and made inquiry as to any criminal record that the potential juror, Chauncey D. Thomp *426 son, may have had with said Police Department; that your Affiant ran the name given to her by the Investigator and advised that the potential juror had been charged with four (4) misdemeanor crimes, they being Simple Possession of Marijuana, No Driver’s License, No Liability Insurance and a Seat Belt Violation; that your Affiant further advised said Investigator that all of these charges had been dismissed by the City for the reason that said potential juror was not the person who committed said four alleged misdemeanors crimes. Attached hereto is a copy of a print-out that was used by said Affiant when she furnished said Investigator with the information.
¶ 41. At trial, the prosecution informed the trial court that its check with the Pascagoula Municipal Court indicated that Chauncey Thompson had been convicted of four misdemeanor charges on February 5, 2003. Attached to Diehl’s affidavit was a document titled “Priors Report.” Diehl stated this was the document which she used on May 17, 2004 to respond to Investigator Scott Melnrath’s inquiry regarding any criminal history of Chauncey Thompson, and informed him that the charges had been dropped. That document listed four charges against an individual named Chauncey Deontae Thompson. For each of those four charges, that report indicated the disposition as “Nolle Pros By Prosecution The Judgement Date Is 2/05/2003 Wrong Person.” The date, February 5, 2003, upon which these charges were dismissed, is the same date the prosecution represented to the trial court to be the date of actual convictions of Thompson. The prosecution’s representation that Chauncey Thompson had been convicted of four misdemeanor offenses in the Pasca-goula Municipal Court was clearly false.
¶42. Investigator Mcllrath, who obtained the information from the Pascagou-la Municipal Court was not some freelance investigator, who worked independently of the prosecutor. He was a very significant part of the prosecution team. This fact is clearly indicated by the district attorney’s remarks at trial, as he describes how he obtained the information on Thompson. He said, “we just called Your Honor. That’s how we got it, over the telephone.” Because Investigator Mcllrath is a significant member of the prosecution team, he is held to the same standard of conduct as the district attorney.
¶ 43. Rule 5.3(b) of the Rules of Professional Conduct, provides, “With respect to a non-lawyer employed or retained by or associated with a lawyer: (b) a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person’s conduct is compatible with the professional obligations of the lawyer.” Under Rule 5.3(b) the district attorney had an obligation to reasonably insure that Investigator Mcll-rath observed the requirements of Rule 3.3 of the Rules of Professional Conduct, which requires: “Candor Toward The Tribunal.” Rule 3.3(a)(1) provides, “A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal.” The record is clear that the statements made regarding Chauncey Thompson were false. The record is clear that the statements regarding Chauncey Thompson were material. What is not clear is whether the false statements were knowingly made.
¶44. The record before this Court is insufficient to allow it to determine whether these false statements were deliberate or inadvertent. Diehl’s affidavit states that on the morning of May 17, 2004, she informed Investigator Mcllrath that the charges against Thompson had been dis *427 missed due to mistaken identity. However, in the argument on the motion for new trial, the prosecution stated that it was unaware on May 17, 2004, that the charges against Thompson had been dismissed. The prosecution’s claim that on May 17, 2004, it was unaware that the charges against Chauncey Thompson had been dismissed is clearly contradicted by the affidavit of Diehl.
¶45. The majority’s mere dismissal of this matter creates the potential for great mischief. Under the position taken by the majority, a prosecutor need only stick his head in the sand like the ostrich, while claiming a lack of knowledge of the actions taken by his subordinates. That position is contrary to the obligations placed upon attorneys under the Rules of Professional Conduct.
¶46. However, the potential for mischief is enhanced when this Court abdicates its responsibility, and likewise emulates the ostrich by sticking its collective head in the sand. The majority justifies its emulation of the ostrich by saying (1) that Batson is difficult to enforce in that it requires the ability to read minds, and (2) this Court is required to defer to the trial judge. Under the facts of this case, it may be convenient to embrace those statements, but mere convenience does not provide validation for doing so.
¶47. If there was a deliberate false statement by any member of the prosecution team which impacted the process of jury selection, then sanctions are appropriate. I would therefore remand to the trial court the issue of (1) whether the misinformation regarding Chauncey Thompson was a deliberate dissemination of misinformation, (2) if it was a deliberate dissemination of misinformation, then who was the responsible party, and (3) if the dissemination was by a person associated with the prosecution, what, if any, sanctions should be imposed upon the prosecution for what the record now clearly reflects was a false statement.
BARNES, J., Joins this Opinion.